# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| TEDDY T. TAYLOR | * | CIVIL ACTION NO. 05-0725 |
| --- | --- | --- |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Teddy Taylor, born April 8, 1951, filed applications for disabled widow's benefits and supplemental security income payments on February 14, 2002, alleging disability as of January 31, 2002, due to high blood pressure, chest pain, and nervousness.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Dr. Derek Metoyer dated January 2, 2002 to February 2002**. On January 2, 2002, claimant complained of having an abnormal cycle. (Tr. 103). She was 5 feet 5 inches tall and weighed 203 ½ pounds. Her blood pressure was 170/100. The assessment was hypertension, for which she was prescribed Tiazac.

On February 2, 2002, claimant complained of nervousness. (Tr. 102). The assessment was hypertension, anxiety and depression. She was prescribed Clonidine, Paxil, and Xanax.

**(2) Records from Opelousas General Hospital dated August 30, 2002**. Claimant was seen for hypertension. (Tr. 111). It was noted that she was non-compliant with her medications. (Tr. 114). She was prescribed Procardia and Clonidine, and instructed to start a low fat, low salt diet. (Tr. 119).

**(3) Records from University Medical Center ("UMC") dated August 8, 2003 to September 5, 2003**. On August 8, claimant was seen for a history of hypertension and having back pain since a motor vehicle accident two weeks prior. (Tr. 126, 132-37). Chest x-rays showed severe cardiomegaly with mild pulmonary venous congestion. (Tr. 123). The assessment was hypertension and non-compliance with medications. (Tr. 126).

**(4) Consultative Internal Medicine Examination by Dr. Samuel J. Stagg, Jr. dated December 18, 2003**. Claimant complained of chest pain with shortness of breath, and high blood pressure with dizzy spells. (Tr. 145). She stated that she cried frequently and was depressed, but was having no suicidal thoughts or tendencies. (Tr. 146). Her medications included Cozaar, Zoloft, and fluid pills. (Tr. 145).

On examination, claimant was 5 feet 6 inches tall and weighed 218 ½ pounds. Her blood pressure was 200/104. Her lungs were clear. Her heart had a regular rhythm and grade 1/6 precordial systolic murmur.

Claimant had no edema of the extremities. (Tr. 146). Pulses and reflexes were normal. She had no apparent muscle weakness or atrophy. Grip, dexterity, and grasping appeared normal.

Range of motion of the upper extremities was normal. Straight leg raising was normal. Claimant had normal range of motion of the knees. She had no clubbing or cyanosis of the digits.

Vibratory and fine touch sensation were normal. Claimant walked on her toes and heels without difficulty. She had normal range of motion of the lumbosacral spine.

Dr. Stagg's impressions were hypertension, etiology undetermined; moderate to severe; chest pain, etiology undetermined; peptic acid disease, and anxiety and

depression. He stated that he was uncertain about her chest pain, but opined that it did not sound like coronary artery disease in nature.

**(5) Consultative Psychological Examination by Dr. Alfred E. Buxton dated June 14, 2004**. Claimant reported having high blood pressure, a benign heart murmur, high cholesterol, allergies to airborne allergens, and a crooked spine since childhood. (Tr. 157). She stated that she had a nerve problem, and that she could not think clearly and forgot things. Her sleep was "pretty good," and appetite was good. (Tr. 158).

Claimant's energy was adequate. She attended Bible meetings, and her primary hobby or pleasure was reading the Bible. She was able to cook, clean, shop, manage money, travel, communicate, and manage time independently.

On examination, claimant's verbal receptive and expressive language skills, dress and groom, and social skill were good. Recent and remote memories were intact. Her ability to attend and concentrate was good. Pace was even.

Intellect appeared to be within normative limits. Judgment, reasoning and reflective cognition were good. Insight was fair. Cognitions were clear and cogent.

Claimant's mood was even with spontaneous and animated affect. Her self-image was fair with a positive goal orientation. She occasionally became easily upset, then tended to pray. She had no crying spells. She had episodic reflective

4

despondency. She was alert, responsive, and oriented in all four spheres.

Dr. Buxton's impression was that claimant's intellect and adaptive daily living skills appeared to be within normal limits. He regarded her as being competent as a manager of her own personal affairs. Clinically, she presented with an adjustment disorder with mixed anxiety and depressed mood, with degree of impairment mild and prognosis fair.

Dr. Buxton determined that outpatient mental health intervention would probably be of benefit. Claimant's Global Assessment of Functioning score was 75 over the previous 12 months. He concluded that "[t]he presence of the aforementioned certainly would not preclude this individual from securing and maintaining gainful competitive employment within the general community at large commensurate with her functional capabilities." (Tr. 158-59).

**(6) Consultative Orthopedic Evaluation by Dr. Christiane Eisele dated May 22, 2004**. Claimant complained of a childhood history of scoliosis and pain for three to four years. (Tr. 163). Additionally, she reported intermittent chest pain on exertion approximately once a week lasting one to two hours, which was decreased by rest. She also had a history of hypertension and headaches secondary to stress.

On examination, claimant was 67 inches tall and weighed 211 pounds. Her blood pressure was 180/90. She ambulated well, and was able to get up and off of the

5

examination table and out of the chair, and undress herself, without difficulty. (Tr 164).

On spine/extremities examination, claimant had 2+ pulses of the lower extremities with no edema, cyanosis, or clubbing. She had no swelling, redness, or atrophy of the muscles, and no joint abnormalities. She was able to lie straight back on the exam table, walk on her heels and toes, and squat without difficulty.

Claimant's grip was 5/5 bilaterally. Her fine and gross manipulation and finger to thumb were normal. She had no evidence of atrophy or deformity in the upper extremities.

Dr. Eisele's impression was that claimant had chronic subjective back pain, which she was unable to confirm on physical examination. (Tr. 165). Dr. Eisele opined that claimant was able to sit, stand, walk, hear, speak, handle objects, and lift a large purse throughout her examination time without difficulty.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Eisele determined that claimant could lift/carry less than 10 pounds occasionally. (Tr. 166). Her ability to stand/walk were affected by her impairment, but her ability to sit and push/pull was not. (Tr. 166-67). She was able to occasionally climb, kneel, crouch, and stoop, but never balance or crawl based on her subjective complaints. (Tr. 167).

**(7) Radiology Reports from Doctors' Hospital dated September 18, 2004**.[1] Lumbar x-rays showed moderately severe spondylotic changes, particularly affecting the L4-L5 segment. (Tr. 178). The impression was lower lumbar spondylosis. Thoracic spine x-rays showed moderate multilevel spondylosis. (Tr. 179). The impression was thoracic spondylosis. Cervical spine x-rays showed moderate spondylotic changes, particularly affecting C4-5 and C5-6. (Tr. 180). The impression was cervical spondylosis.

**(8) Report from Louisiana State University Health Sciences Center ("LSU") dated January 14, 2005**. Claimant was treated for chest pain, chest wall pain, and hypertension. (Tr. 183). She was prescribed Diovan HCT, and instructed to follow up in two weeks.

**(9) Claimant's Administrative Hearing Testimony**. At the hearing on November 17, 2003, claimant was 52 years old. (Tr. 186). She had attended school through the 12th grade. She had last worked as a housekeeper in the 1960s or 1980s. (Tr. 186-87).

Claimant testified that she was taking medications for her heart, high blood pressure, and nerves. (Tr. 187-88, 194). She reported that she had filed for disability because she had high blood pressure and no medicine, and was sick all of the time

---

[1] The following records were submitted to the Appeals Council.

7

with nerve problems and arthritis. (Tr. 188). Additionally, she complained of chest pain, dizziness, and depression. (Tr. 189, 193).

Regarding limitations, claimant testified that she could sit or stand for about 10 to 15 minutes, then had to lie down. (Tr. 190). She stated that she could not walk more than a half-mile because of arthritis in her leg. (Tr. 190-91). She stated that she could not bend or squat.

Additionally, claimant testified that her children helped her bathe and dress. She stated that she could drive a little bit, but her daughter took her where she needed to go. She also said that her children went grocery shopping with her.

As to activities, claimant reported that she was able to make the bed and cook a little bit. (Tr. 191-92). She said that she sat at home and read her Bible for two to three hours a day. (Tr. 192).

**(10) The ALJ's Findings**. Claimant argues that: (1) the Appeals Council failed to follow its own policy and procedures with regard to new and material evidence, and (2) the ALJ's assessment of claimant's residual functional capacity is unsupported by the totality of evidence. Because I find that the Appeals Council erred in failing to consider properly consider the new evidence submitted by claimant, I recommend that this matter be **REMANDED** for further proceedings.

Claimant argues that the Appeals Council failed to properly consider additional evidence, including radiology reports from Doctors' Hospital dated September 18, 2004, and an Emergency Room report from LSU dated January 14, 2005. (rec. doc. 11, p. 2; rec. doc. 13, pp. 1-2). In rendering his decision, the ALJ noted that "[t]here is no objective evidence in the record to support the degree of pain and limitation alleged by claimant." (Tr. 18). Subsequently, claimant submitted the above-referenced report from Doctors' Hospital which show objective findings which could conceivably support claimant's pain complaints. (Tr. 178-80).

The *Hearings, Appeals and Litigation Law Manual* (HALLEX) Section I-3-501 (Nov. 11, 1994), provides that the Appeals Council must "specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review." *Newton v. Apfel*, 209 F.3d 448, 459-60 (5th Cir. 2000). While the Council acknowledged that it received the additional evidence submitted by claimant, it did not specifically address it. (Tr. 5-9). This was a violation of the internal procedures of the Council. *Id.*

While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981). If

9

prejudice results from a violation, the result cannot stand. *Id.* Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton*, 209 F.3d at 458.

The medical records which claimant submits as new evidence are x-rays dated September 18, 2004, which show "moderately severe spondylotic changes," particularly affecting the L4-L5 segment; "moderate multilevel spondylosis" in the thoracic spine, and cervical spondylosis. (Tr. 178-80). In his decision, the ALJ found that claimant's testimony was not fully credible, based on the fact that there was no objective evidence to support her complaints of pain. (Tr. 18). This additional diagnostic testing, which provides objective evidence to support claimant's complaints, might have led to a different decision by the ALJ, and in any case would require discussion by the ALJ. Thus, I find that this case should be remanded for further proceedings.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to assess claimant's spinal impairments in light of the diagnostic tests and develop the record by conducting an

adequate hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 18th day of April, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE